IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Mitch Catterson, | : | |
| Plaintiff | : | Civil Action 2:10-cv-00112 |
| v. | : | Judge Watson |
| Michael J. Astrue, | : | Magistrate Judge Abel |
| Commissioner of Social Security, | | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Mitch Catterson brings this action under 42 U.S.C. §§405(g) and 1383(c) for review of a final decision of the Commissioner of Social Security denying his application for Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.**

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because Catterson meets or equals Listing 12.05C because his IQ testing since high school has shown scores in the requisite range; he has other impairments that impose additional and significant limitations on his ability to work; and he has demonstrated deficits in adaptive function that manifested during the developmental years.

**Procedural History.** Plaintiff Mitch Catterson filed his application for disability insurance benefits on November 29, 2001, alleging that he became disabled on January

1, 2001, at age 38, by knee and shoulder impairments, mental impairment, and a heart condition. (R. 66, 79.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On March 2, 2004, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 305-33.) A vocational expert also testified. On October 27, 2004, the administrative law judge issued a decision finding that Catterson was not disabled within the meaning of the Act. (R. 29.) On July 29, 2005, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 4-7.) Plaintiff sought judicial review of the final decision of the Commissioner in this Court. The Magistrate Judge recommended that Catterson's case be remanded for further consideration of whether he met or equaled Listing 12.05C and because the administrative law judge did not expressly evaluate Dr. Griffith's opinion as a treating doctor. (R. 396.) On March 16, 2007, the Court adopted the Report and Recommendation, and this case was remanded. (R. 371-73.)

On remand, the administrative law judge held another hearing. (R. 690-722.) In an August 28, 2007 decision, the administrative law judge issued a decision finding that Catterson did not meet or equal Listing 12.05C and that he was not disabled within the meaning of the Act.(R. 579-600.) The Appeals Council granted plaintiff's request for review and remanded the case for the administrative law judge to consider the opinion of Dr. Griffith. A third hearing before an administrative law judge was held, and in a

December 12, 2008 decision, the administrative law judge found that plaintiff was not disabled within the meaning of the Act. The Appeals Council denied plaintiff's request for review on December 11, 2009, making the administrative law judge's decision the final decision of the Commissioner. Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) and § 1383 for judicial review of the Commissioner's final decision.

**Age, Education, and Work Experience.** Mitch L. Catterson was born January 2, 1963. (R. 66.) He completed the 9th grade in special education classes. (R. 28, 85.) He testified that he is unable to read or to count change. (R. 329.) According to the test results of the Wide Range Achievement Test administered to Catterson in the ninth grade, he could read at a third grade level and his arithmetic skills were at the fourth grade level. (R. 124.) Testing on the PIAT-R Reading Recognition and Reading Comprehension tests administered in 1996 showed grade equivalent scores of 1.5 and 1.2 (R. 303.) He has worked as a laborer and truck driver. He last worked December 20, 2000. (R. 79.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized Catterson's testimony as follows:

> In October 2008 the claimant testified that he lived with his ex-wife in a mobile home. He stopped driving in 1982 due to DUIs and fines. He failed the written test for his driver's license but passed the oral test. He still has low back pain. His diabetes is poorly controlled, and he is weak. He still has chronic obstructive pulmonary disease but no treatment now or recent testing. He has left knee pain but no treatment besides the history of arthroscopic surgery other than Flexeril. The knee gives out.

3

> The claimant reported a total left ankle replacement [December 2007]. He is not able to walk well on the ankle, and he has pain all the time. He has not had physical therapy.
>
> He stated that he still had an anger problem and had the problem all his life. If someone tells him to do something he "blows up." He takes Prozac.
>
> The claimant estimated that he could walk less than one block, stand for 10 to 15 minutes, and sit for 20 to 30 minutes, each at a time. He could lift a gallon of milk.

(R. 347.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence concerning plaintiff's mental impairments.

**Psychological Impairments.**

Robert A. Lee. On October 25, 1979, Robert A. Lee, a school psychologist, examined plaintiff for the Marysville Exempted Schools.(R. 124- 27.) The Weschler Scale was administered and ranked Catterson in the borderline range of mental retardation. On the verbal sub-test, Catterson had a significantly lower aptitude. His reading and spelling skills were at the early third grade level. Catterson met the intellectual, academic, and social requirements to continue in special education classes. Severe reading problems prevented him from participating in reading oriented subjects outside of his special education classes. Mr. Lee believed that it was unlikely that Catterson would graduate from high school given his attitude.  (R. 126.)

<u>George E. North, Ph.D</u>. On August 14, 1996, Dr. North performed a psychological assessment of plaintiff. (R. 300-04.) He administered the WAIS test. Catterson achieved a verbal score of 71, a performance score of 70, and a full scale IQ score of 69. (R. 302.) Dr. North stated that these IQ scores were on the borderline between mildly retarded and borderline categories. He was reluctant to call him mildly retarded because he believed that a modest effort would probably result in a higher score. (R. 303.)

<u>Albert E. Virgil, Ph.D., J.D.</u> On April 12, 2002, Dr. Virgil evaluated Catterson. He determined that Catterson was functioning with the mild level of mental retardation according to the WAIS III results, but Catterson did not meet DSM-IV criteria for deficits in adaptive behavior. Dr. Virgil opined that Catterson was likely functioning within the borderline range. Memory functioning was in the mentally retarded level, and plaintiff did not exhibit reading comprehension ability.

Dr. Virgil concluded that plaintiff's ability to complete daily activities was moderately impaired. Catterson was cooperative during the session and did not display any behaviors that demonstrated he was incapable of cooperating with supervisors or co-workers. Plaintiff followed directions during the session, and his attention, concentration, and immediate memory ability were within the borderline level. Dr. Virgil opined that plaintiff had moderate to marked impairment with respect to following repetitive tasks requiring close attention and concentration. Due to his borderline intelligence, impaired memory, depressed mood, and personality disorder

features, Dr. Virgil did not believe that plaintiff could complete skilled or semi-skilled work. However, his mental or emotional impairment would not prevent from him completing unskilled work activity.

Dr. Virgil diagnosed major depression, recurrent, moderate; estimated borderline intellectual functioning; and, personality disorder, not otherwise specified, antisocial and paranoid features. (R. 139-43.)

<u>Vickie P. McCreary, Ph.D.</u> On April 20, 2002, Vickie P. McCreary, Ph.D., a psychologist, reviewed the record and completed a mental residual functional capacity assessment. She noted that plaintiff had borderline intellectual functioning. (R. 152.) She found moderate to marked limitations in plaintiff's ability to understand and remember detailed instructions and in his ability to carry out detailed instructions, Dr. McCreary believed that plaintiff was moderately limited in his abilities to maintain attention and concentration for extended periods; to perform activities within customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods. With respect to social interaction, plaintiff had moderate limitations in his ability to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. McCreary further opined that plaintiff was

moderately impaired in his ability to respond appropriately to changes in the work setting. (R. 145-60.)

L/C Consolidated Care Inc. On August 21, 2002, a psychosocial assessment and intake was completed. Plaintiff presented at L/C Consolidated Care because of difficulty controlling his temper. He was diagnosed with intermittent explosive disorder and rule out diagnoses of bipolar disorder and attention deficit disorder. He was assigned a Global Assessment of Functioning score of 40. He reported numerous incidents of driving under the influence (DUIs). He also reported periods of intense depression. It was noted that plaintiff was not able to read. He reported that the longest he had ever held a job was only for a few months. He reported that he having seizures.

Plaintiff reported that he used to have an alcohol problem, but that he no longer had one. On mental status examination, plaintiff appeared preoccupied, paranoid, suspicious, and angry. Fleeting hostility was noted, but plaintiff was apparently easily calmed. (R. 161-65.)

On August 21, 2002, Deborah Jessie, LISW, a therapist, assessed plaintiff's emotional and behavioral functioning. (R. 250-54.) Plaintiff reported difficulty managing his anger since he was a teenager. He was given a rule out diagnosis of antisocial personality disorder. He also reported a history of using multiple drugs and alcoholism. (R. 250.)  He reported that his father physically abused him.(R. 251.)

Plaintiff was seen by Ms. Jessie on September 5, 2002 and September 25, 2002. On September 5, 2002, plaintiff reported that he got drunk for the first time in years after

7

his girlfriend threw him out of the house. His mood was dysphoric with congruent affect. On September 25, 2002, Catterson reported that he had been thrown out of his mother's house after getting into a fight with his stepfather. (R. 170-71.) Plaintiff did not return for his scheduled appointments on October 10th or November 6th. (R. 172-73.)

On November 14, 2002, plaintiff was seen by Dr. Griffith, a physician at L/C Consolidated Care, Inc. Plaintiff reported that his seizures had started four months ago. He reported struggling with his anger and had been arrested for domestic violence four times. He reported that he preferred to be by himself and had problems being around others. He reported feelings of emptiness and boredom. He also stated that he had been sober for the past 4 years. He had interrupted sleep and low energy. He experienced feelings of hopelessness. Dr. Griffin diagnosed major depression with psychotic features, posttraumatic stress disorder, generalized anxiety disorder, and learning disabilities or mild mental retardation. She also noted that plaintiff was illiterate. (R. 174-76.)

On August 22, 2002, Ms. Jessie wrote a letter to Dr. Das asking to prescribe Catterson psychotropic medications until an appointment with a psychiatrist was available at Consolidate Care, Inc. (R. 231.)

K. Das, M.D. On September 13, 2002, Dr. Das evaluated plaintiff for medication to address plaintiff's psychiatric problems. Catterson reported experiencing sadness everyday, difficulty concentrating, and feeling fatigued. He also reported decreased interest in activities and diminished appetite and sleep. Plaintiff also reportedly drank

8

alcohol. Dr. Das started plaintiff on Paxil. He diagnosed major depression, and possibly intermittent explosive disorder. (R. 232.)

Linda Griffith, M.D. On May 15, 2003, Dr Griffith responded to interrogatories from to the Social Security Administration Office of Hearings and Appeals. She indicated that she did not believe that Catterson would be prompt and regular in attendance; respond appropriately to supervision, co-workers, and customary work pressures; withstand the pressure of meeting normal standards of work productivity and work accuracy without significant risk of physical or psychological decompensation; or sustain attention and concentration on his work to meet normal standards of productivity and work accuracy. Dr. Griffith believed that plaintiff could understand, remember and carry out very simple work instructions, limited to one or two steps, without requiring very close supervision.

Dr. Griffith also checked boxes indicating that Catterson could not behave in an emotionally stable manner; relate predictably in social situations; demonstrate reliability; maintain concentration and attention for extended periods; and perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.  Dr. Griffith further opined that plaintiff would be unable to complete a normal workday or workweek without interruption from psychologically based symptoms; respond appropriately to changes in a routine work setting; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; sustain an ordinary routine without special supervision; work in coordination

with, or in proximity to, others without being unduly distracted by them; or accept instructions and respond appropriately to criticism from supervisors. She further noted that plaintiff had borderline intellectual functioning, poor comprehension and excessive emotional responses to situations. He also was suspicious, illiterate, and easily distracted. She acknowledged that she was not his medical doctor, but she stated that his low back pain impacted his sleep and his physical capacity.(R. 244-47.)

On May 20, 2003, Dr. Griffith noted that plaintiff was staying sober. Plaintiff had poor sleep, irritability, and intrusive thoughts from past abuse. Catterson was also experiencing anxiety. Dr. Griffith increased his medications. (R. 249.) On May 15, 2003, plaintiff complained of difficulty concentrating, irritability, and his inability to read or write to Dr. Griffith. Dr. Griffith increased plaintiff's Paxil and Depakote and instructed him to return in three months. (R. 248).

Anthony Alfano, Ph.D. On October 28, 2003, Dr. Alfano, a clinical psychologist, evaluated plaintiff for the Bureau of Disability. (R. 260-63.) On mental status examination, plaintiff's mood and affect were normal. He maintained good eye contact throughout the interview. He reported difficulty sleeping more than three hours at a time. He reported having crying spells almost every night. He also acknowledged that he had passing suicidal ideation and feelings of hopelessness and helplessness. Catterson reported that he was suspicious of strangers. He denied feeling physical hostility or aggressiveness, but he did become verbally hostile.

Catterson's short term memory appeared intact. Catterson would not attempt serial sevens or spelling "world" backwards. He stated that he was not able to read or write. Dr. Alfano did not believe that Catterson was competent to manage his own funds. He diagnosed a learning disorder, not otherwise specified; a reading disorder; a mathematics disorder; and a personality disorder, not otherwise specified. He assigned plaintiff a GAF score of 50. (R. 263.)

Dr. Alfano also completed a medical source statement of ability to do work-related activities. (R. 264-65.) He opined that Catterson was moderately limited in his ability to understand and remember short, simple instructions and carry out short, simple instructions. He was markedly limited in his ability to carry out detailed instructions and to make judgments on simple work-related decisions. (R. 264.) Dr. Alfano indicated that his conclusions were based on plaintiff's self reports. (R. 265.)

<u>Mary Buban, Ph.D.</u> Dr. Buban, a psychologist, testified as a medical expert at plaintiff's 2007 and 2008 hearings before the administrative law judge. In 2007, Dr. Buban indicated that Dr. Virgil had concluded that plaintiff was functioning in the borderline intellectual range despite his 1979 test results. Dr. Buban testified that plaintiff's school records did not show that Catterson had the requisite deficits in adaptive functioning. She noted that he had a significant reading disability and that when information was provided to him in an alternative format he was able to achieve positive results. She pointed to his ability to obtain a driver's license as an example. She also relied on the fact that at times he was able to maintain employment. Dr. Buban

concluded that plaintiff was most accurately characterized as having borderline intellectual functioning rather than mental retardation, and, as a result, Catterson did not meet or equal Listing 12.05C.

In 2008, Dr. Buban reiterated that Catterson did not meet or equal any listing. (R. 759.)

**Administrative Law Judge's Findings.**

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2001.

2. The claimant has not engaged in substantial gainful activity since January 1, 2001, the alleged disability onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: borderline intellectual functioning with reading disorder; alcohol abuse disorder without evidence of remission; affective disorder with features of depression and anxiety versus substance-induced mood disorder; diabetes mellitus; left ankle impairment with residuals of total replacement; obesity; and degenerative changes in the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Residual Functional Capacity. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to: lift up to 20 pounds occasionally and 10 pounds frequently; he must avoid climbing ropes, ladders, and scaffolds, exposure to hazards, working on uneven surfaces, and repetitive use of foot controls on the left; and he is limited to simple one- or two-step tasks requiring little, if any concentration, no requirement to maintain concentration on a single task for longer than 15 minutes at a time, no work involving reading or

    writing as part of duties, and no jobs in contact with alcohol. In addition, he is limited to low stress jobs including no dealing with the general public, no more than minimal contact with co-workers, and supervisors–including no teamwork–, and no fast-paced work. Therefore, the claimant is limited to a reduced range of light work.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on January 2, 1963. He is 45 and a "younger individual" (20 CFR 404.1563 and 416.963).

8.  The claimant has a "limited" education and is able to communicate in English except for poor reading skills (third grade level when he was 16 and in the 9th grade – 10E)(20 CFR 404.1564 and 416.964).

9.  The claimant does not have transferable skills. This finding is based on Vocational Expert testimony.

10.  Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a "disability," as defined in the Social Security Act, from January 1, 2001, the alleged disability onset date, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 348-55.)

  **Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because he meets or equals Listing 12.05C. Plaintiff argues that the most recent decision of the administrative law judge does not contain a new analysis of Catterson's claim under Listing 12.05C. The administrative law judge noted that the issue of intellectual functioning was discussed in the August 2007 decision and that the Appeals Counsel had only remanded the case to address the medical source opinion. Plaintiff maintains that the administrative law judge's reliance on the prior decision's analysis was in error given the new testimony from the vocational and medical experts at the 2008 hearing.

Plaintiff maintains that he has valid IQ scores within the range contemplated by the Listing. When Catterson was in the ninth grade, he was given a Wechsler's Intelligence Scale for Children - Revised (WISC-R) to assess his intellectual abilities. He achieved a performance IQ score of 86, a full scale IQ score of 73, and a verbal IQ score

of 65. The psychologist administering the test gave no indication that the test results were invalid or did not accurately reflect Catterson's ability. Testing performed in 1996 also revealed scores within in the range contemplated by the Listings. Catterson achieved a verbal IQ score of 71, a performance IQ of 70, and a full scale IQ pf 69. Dr. North indicated that the scores were on the borderline between mild retardation and borderline intellectual functioning. (R. 302-03.) Plaintiff argues that neither administrative law judge adequately addressed the validity of his IQ scores.

Catterson also argues that he has other impairments that impose significant and additional work-related restrictions. Catterson is obese and has degenerative changes in his lumbar spine. He also has a left ankle impairment in addition to other impairments which led the administrative law judge to limit his light work.

Catterson further argues that he has demonstrated deficits in adaptive functioning that manifested in the developmental period. Plaintiff maintains that he exhibited deficits in academic functioning prior to age 22. He was in special education classes in high school. Testing revealed that his word recognition and spelling were at a 3.0 grade level. His education goals were limited to increasing his sight vocabulary of survival words such as danger, poison, and stop.  His math skills were at a 4.7 grade level. He dropped out of school.

In her 2007 testimony, Dr. Buban stated that despite limited achievement in intelligence testing, she did not believe that Catterson's school records documented deficits in academic functioning. In 2008, Dr. Buban testified that Catterson had severe

15

deficits in academic tasks. Plaintiff argues that the administrative law judge erred when he concluded that plaintiff had performed skilled work as a mechanic and a truck driver. In actuality, Catterson had never obtained a CDL, and he had worked as a mechanic's helper, rather than as a mechanic. He maintains that his earnings records documents a sporadic work history, and none of his past relevant work constituted substantial gainful employment.

Plaintiff further argues that Dr. Buban testified that plaintiff had marked restriction in social function. She further noted, however, that his deficits in social functioning were not related to his IQ. Plaintiff contends that Listing 12.05C does not required that deficits in adaptive functioning be related to IQ.

**Analysis.**  Plaintiff argues that the administrative law judge's finding that Mr. Catterson did not meet or equal Listing 12.05C is not supported by substantial evidence. Listing 12.05C provides in pertinent part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1. To meet the listing for mental retardation, an impairment must satisfy both the diagnostic description in the introductory paragraph

of § 12.05 and one of the four sets of criteria found in subparagraphs A through D. *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001). To meet Listing 12.05C, a claimant must be diagnosed with mental retardation. Here, plaintiff has been diagnosed with borderline intellectual functioning. Because the administrative law judges relied on Dr. Buban's expert testimony that he was diagnosed with borderline intellectual functioning and that he did not meet Listing 12.05C, the decisions are supported by substantial evidence. Additionally, Dr. North, Dr. Virgil and Dr. McCreary all opined that plaintiff had borderline intellectual functioning rather than mental retardation.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v.*

17

*Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R.  Abel
United States Magistrate Judge
