UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Mitch Catterson,

      Plaintiff,

v.

Michael J. Astrue, Commissioner
of Social Security,

      Defendant.

Case No. 2:10–cv–112

Judge Michael H. Watson
Magistrate Judge Abel

## ORDER

This matter is before the Court on Plaintiff Mitch Catterson's February 14, 2011 objections to Magistrate Judge Abel's January 31, 2011 Report and Recommendation. The Court, having reviewed the record *de novo*, determines that there is substantial evidence supporting the administrative law judge's determination that Plaintiff Mitch Catterson is not disabled within the meaning of the Social Security Act. The Court further finds for the reasons set out below that Plaintiff's objections to the Report and Recommendation are without merit.

Plaintiff argues that a diagnosis of mental retardation is not required under Listing 12.05C, and the Magistrate Judge erred when he stated that a claimant must be diagnosed with mental retardation to meet Listing 12.05C. According to Plaintiff, a claimant simply must satisfy the diagnostic description in the introductory paragraph of § 12.05 in addition to any one of the four sets of criteria in § 12.05. Plaintiff maintains that the evidence supports a finding that he meets or equals Listing 12.05C. Dr. Buban conceded that the record demonstrates valid IQ scores within the range contemplated

by the Listing and deficits in adaptive functioning in the areas of academic functioning and occupational functioning. In school, Catterson was in special education throughout his education. He only achieved a 3.0 grade level in reading, and his math skills were tested at 4.7 grade level. Catterson's detailed earnings record documents a sporadic work history, and none of his past relevant work rose to the level of substantial gainful employment. Plaintiff further maintains that the record documents other physical and mental impairments imposing an additional and significant work-related limitation on functioning.

Plaintiff argues that the administrative law judge mischaracterized the testimony of Dr. Buban, the medical expert. The administrative law judge indicated that Dr. Buban stated that the school records did not demonstrate deficits in adaptive functioning prior to age 22. Plaintiff contends, however, that Dr. Buban acknowledged that Catterson exhibited deficits in academic functioning and social functioning.

> Listing 12.05C provides in pertinent part:
>
> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1. To meet the listing for mental retardation, an impairment must satisfy both the diagnostic description in the introductory paragraph of § 12.05 and one of the four sets of criteria found in subparagraphs A through D. *Foster*

*v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001). The Magistrate Judge stated that to meet Listing 12.05C, a claimant must be diagnosed with mental retardation, but Plaintiff contends that a diagnosis of mental retardation is not necessary to meet this listing. Here, Dr. North,[1] Dr. McCreary,[2] and Dr. Buban[3] concluded that plaintiff had borderline intellectual functioning rather than mental retardation. When presented with Plaintiff's test scores and clinical presentation, none of the examining or reviewing psychologists concluded that plaintiff was mentally retarded. *See e.g., Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x. 450, 452, 2007 WL 543059, at *1 (6th Cir. 2007) ("It is undisputed that no psychologist has diagnosed [the claimant] with mental retardation. The examiner and clinical psychologist who tested him diagnosed him instead as borderline intellectual functioning."). Dr. North, who administered the 1996 IQ testing, was reluctant to diagnose Plaintiff with mental retardation because "even a modest effort beyond his somewhat tired and subdued manner today would probably get him a few

---

[1] On August 14, 1996, George E. North, Ph.D. performed a psychological assessment of plaintiff. (R. 300-04.) He administered the WAIS test. Catterson achieved a verbal score of 71, a performance score of 70, and a full scale IQ score of 69. (R. 302.) Dr. North stated that these IQ scores were on the borderline between mildly retarded and borderline categories. He was reluctant to call him mildly retarded because he believed that a modest effort would probably result in a higher score. (R. 303.)

[2] On April 20, 2002, Vickie P. McCreary, Ph.D., a psychologist, reviewed the record and completed a mental residual functional capacity assessment. She noted that Plaintiff had borderline intellectual functioning. (R. 152.)

[3] Mary Buban, Ph.D., a psychologist, testified as a medical expert at Plaintiff's 2007 and 2008 hearings before the administrative law judge. In 2007, Dr. Buban indicated that Dr. Virgil had concluded that Plaintiff was functioning in the borderline intellectual range despite his 1979 test results. Dr. Buban testified that plaintiff's school records did not show that Catterson had the requisite deficits in adaptive functioning. She noted that he had a significant reading disability and that when information was provided to him in an alternative format he was able to achieve positive results. She pointed to his ability to obtain a driver's license as an example. She also relied on the fact that at times he was able to maintain employment. Dr. Buban concluded that Plaintiff was most accurately characterized as having borderline intellectual functioning rather than mental retardation, and, as a result, Catterson did not meet or equal Listing 12.05C. In 2008, Dr. Buban reiterated that Catterson did not meet or equal any listing. (R. 759.)

more points." (R. 303.) Despite Plaintiff's argument to the contrary, Dr. Buban concluded that Plaintiff did not have the requisite deficits in adaptive functioning due to his intellectual functioning. She specifically testified his school records did not demonstrate deficits in adaptive functioning necessary to meet or equal the Listing.[4] Furthermore, mental retardation and borderline intellectual functioning are mutually exclusive diagnoses. DSM-IV-TR at 41–43, 740. Because the administrative law judge relied on the conclusions of Dr. North, Dr. McCreary, and Dr. Buban, all of whom opined that plaintiff had borderline intellectual functioning rather than mental retardation, his decision is supported by substantial evidence.

Plaintiff also argues that Dr. Buban's opinion was based on a misunderstanding of the nature of Plaintiff's prior work. Plaintiff testified that he previously worked as a mechanic and a truck driver. Dr. Buban specifically asked if she had heard his testimony correctly, and counsel for Plaintiff responded in the affirmative. Upon further questioning by the vocational expert, it was determined that Plaintiff's work was more accurately described as a mechanic's assistant and that he did not have his commercial driver's license because his license had been suspended. This testimony was apparently given when the medical expert was no longer present. No further questions were directed to Dr. Buban to determine whether or not this impacted her opinion. As a result, Plaintiff calls into question the validity of Dr. Buban's testimony given the more accurate description of plaintiff's past work. The Court notes, however, that Plaintiff's

---

[4] "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." Diagnostic and Statistical Manual of Mental Disorders, 41–42 (4th ed. text. rev 2000).

counsel made no effort to recall Dr. Buban to elicit her opinion based on the testimony of the vocational expert. Furthermore, Dr. Buban opined that Plaintiff did not exhibit deficits in adaptive functioning prior to age 22. The nature of the work Plaintiff performed does not change the fact that Dr. Buban failed to see the requisite deficits prior to age 22.

Upon *de novo* review in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation. Plaintiff's motion for summary judgment is **DENIED**. Defendant's motion for summary judgment is **GRANTED**. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is **DIRECTED** to enter **JUDGMENT** for defendant. This action is hereby **DISMISSED**.

**IT IS SO ORDERED.**

/s/ Michael H. Watson
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**